[No. 10101. Department One. February 20, 1912.]

D. L. Goldbach *et al.*, *Appellants*, v. L. Gaines *et al.*,
*Respondents.*[1]

BOUNDARIES—PLATS—CONSTRUCTION—LOCATION OF LINE. Where the northwest corner of a plat is 8¼ feet south of the government subdivision, and the northeast corner is 21.44 feet south of the same line, the true north line of the townsite is the north line of the north tier of blocks as actually marked on the plat and not the government subdivision line.

BOUNDARIES—AGREED LOCATION—EVIDENCE—SUFFICIENCY. It cannot be claimed that there was an agreed location of a boundary along a blazed line, where one of the parties refused to build a fence thereon until it was surveyed, and the other did not know exactly where the line was and agreed that the line was subject to survey.

Appeal from a judgment of the superior court for King county, Albertson, J., entered July 10, 1911, upon findings in favor of the defendants, in an action to establish a boundary line. Affirmed.

*Milo A. Root*, for appellants.

*Wingate & Dolby*, for respondents.

Gose, J.—This is an action to establish the boundary line between the properties of the plaintiffs and the defendants. There was a judgment for the defendants. The plaintiffs have appealed.

The following is a summary of the facts: The town of Huron was platted in 1890 by the common grantors of the respective parties. The respondents' immediate grantors acquired title to their property in 1902. The appellants acquired title to their property in 1906. The respondents acquired title in 1909. The respective properties were described by metes and bounds in the deeds of conveyance. The deed, both to the respondents and their immediate grantors,

[1]Reported in 121 Pac. 61.

described their properties as "beginning at a point thirty
feet south of the southwest corner of block 3, in the town of
Huron, according to the plat of said town on record in the
office of the auditor; thence east on a line parallel to the
south line of said block 3," etc. The appellants' deed de-
scribes their land as "commencing at the southwest corner
of the land of Abertel Ludington," she being the respondents'
immediate grantor. The plat of the town of Huron as re-
corded shows the northwest corner of the platted land to be
eight and one-fourth feet southerly of the government sub-
division, and the northeast corner 21.44 feet south or south-
erly of the same line. The bone of contention between the
parties, if we understand the testimony of the civil engi-
neers, is whether the government subdivision line, or the
north line of the north tier of blocks as actually marked on
the plat, is the true north line of the townsite. The appel-
lants contend for the former line, and the respondents for
the latter. The court found in favor of the respondents.
There is abundant testimony to support the finding. The
engineer upon whose survey the appellants rely testified that
his survey conformed to the old fence lines and to a blazed
line between the properties of these parties. The line fixed
by the trial court takes about three feet of the appellants'
barn, and a private roadway and drainage ditch built and
used in common by the parties. The judgment, however,
provides for a permanent common user of the roadway and
ditch, and enjoins the respondents from interfering with the
land upon which the appellants' barn is located, so long as
the barn remains thereon.

The land in dispute is a small wedge-shaped tract widening
from west to east. The appellants contend (1) that a cor-
rect interpretation of the plat supports their contention, and
(2) that the lines adopted by the respective parties and their
grantors, as shown by the fences and blazed lines, should be
held controlling. The first contention cannot be sustained.
The civil engineers who testified in the case do not agree

upon that interpretation of the plat. It is significant, however, that the engineer who made the survey from which the plat was made testified that the lines as marked upon the plat conformed to the survey, and that the government subdivision was not the north line of the plat. This testimony harmonizes with the calls in the respondents' muniments of title. Upon this state of facts, we are not disposed to disturb the conclusion reached by the trial court.

Nor can we agree with the second contention. The appellant husband testified that he had a conversation with the respondent husband in the spring of 1909 about constructing a division fence in which the witness said: "I says, I don't want to fence until I get the place surveyed; that Ludington and I had often spoken about getting the line surveyed and we did not want to put any improvement like a permanent fence on the land without knowing that they were on the line." The appellant Mrs. Goldbach testified that: "Well, it was really understood that the line was about where we saw it blazed out. Mr. Goldbach showed me several times. We walked around there, and when any of us lived there we had in our mind about where the line was. We don't know just to the inch, but we agreed it was subject to survey. We agreed that whichever way the survey was made we would go by it." A witness who owned land adjoining the respondents' tract on the north testified that his fences were built with reference to the government subdivision; that he did not know whether they were on the true line, and that "I never had any idea about it, because I didn't know where the fences were. I don't think anybody else did until they had it surveyed. They were always talking about having it surveyed." A reading of this testimony makes it plain that the appellants cannot prevail upon the principle of estoppel, or upon the ground of an agreed boundary line which is but a form of estoppel. Their own testimony precludes the application of such a principle.

The appellants have cited *Olson v. Seattle*, 30 Wash. 687, 71 Pac. 201. It is there held that, "where there is a discrepancy between the survey and the plat, the survey controls when it can be ascertained." This rule is well settled, but it affords no comfort to the appellants. In that case the lots as actually surveyed and marked on the ground did not conform to the recorded plat. In this case there is no evidence of any stakes or monuments to indicate where the actual survey was, unless we infer that the blazed line was intended to mark the course of the survey. The excerpted testimony shows that the parties in interest did not rely upon the blazed line as being the true line, and there is nothing to indicate the purpose of the blazing. While the fences seem to have been built with reference to the government subdivision upon the north as being the boundary line of the town plat, it is evident from the testimony of all the witnesses that they did not know the location of their boundary lines, and that they did not claim that their fences were upon the true line.

The judgment is affirmed.

DUNBAR, C. J., CHADWICK, PARKER, and CROW, JJ., concur.